UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

A.G.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

Case No.  24-cv-06884-JCS

**ORDER RESOLVING SOCIAL
SECURITY CHALLENGE**

Re: Dkt. Nos. 19, 24

## I.      INTRODUCTION

Plaintiff A.G.[1] brings this action challenging the decision of Defendant the Commissioner of Social Security ("the Commissioner")[2] denying her application for disability benefits. The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c) and filed briefs on the merits in accordance with the Federal Rules of Civil Procedure's Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g). For the reasons discussed below, the Court finds in favor of A.G. The Commissioner's decision is REVERSED, and the case is REMANDED for further administrative proceedings consistent with this Order

## II.     REGULATORY FRAMEWORK FOR DETERMINING DISABILITY

### A.     The Five-Step Framework

Disability insurance benefits are available under the Social Security Act (the "Act") when

---

[1] Because opinions by the Court are more widely available than other filings and this Order contains potentially sensitive medical information, this Order refers to Plaintiff using only her initials. This Order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] Commissioner Frank Bisignano assumed that role while this case was pending and is therefore automatically substituted as the defendant in this case under Rule 25(d) of the Federal Rules of Civil Procedure.

an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 423(a)(1). A claimant is only found disabled if their physical or mental impairments are of such severity that they are not only unable to do their previous work but also "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a sequential, five-part evaluation process to determine whether a claimant is disabled under the Act. *See Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Id.* "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Id.*

At step one, the ALJ considers whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in such activity, the ALJ determines that the claimant is not disabled, and the evaluation process stops. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ continues to step two. *See id.*

At step two, the ALJ considers whether the claimant has "a severe medically determinable physical or mental impairment" or combination of such impairments that meets the regulations' twelve-month durational requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). An impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, disability benefits are denied. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that one or more impairments are severe, the ALJ proceeds to the next step. *See id.*

At step three, the ALJ compares the medical severity of the claimant's impairments to a list of impairments that the Commissioner has determined are disabling ("Listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If one or a combination of the claimant's impairments meets or equals the severity of a listed impairment, the claimant is

United States District Court
Northern District of California

disabled.  20 C.F.R. § 404.1520(a)(4)(iii).  Otherwise, the analysis continues.  *See id.*

At step four, the ALJ must assess the claimant's residual functional capacity ("RFC") and past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  The RFC is "the most [a claimant] can still do despite [that claimant's] limitations . . . based on all the relevant evidence in [that claimant's] case record."  20 C.F.R. § 404.1545(a)(1).  The ALJ then determines whether, given the claimant's RFC, the claimant would be able to perform their past relevant work.  20 C.F.R. § 404.1520(a)(4).  Past relevant work is "work that [a claimant] has done within the past fifteen years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it."  20 C.F.R. § 404.1560(b)(1).  If the claimant is able to perform their past relevant work, then the ALJ finds that they are not disabled.  If the claimant is unable to perform their past relevant work, then the ALJ proceeds to step five.

At step five, the Commissioner has the burden to "identify specific jobs existing in substantial numbers in the national economy that the claimant can perform despite [the claimant's] identified limitations."  *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)).  If the Commissioner meets this burden, the claimant is not disabled.  *See* 20 C.F.R. § 404.1520(f).  Conversely, the claimant is disabled and entitled to benefits if there are not a significant number of jobs available in the national economy that the claimant can perform.  *Id.*

### B.    Factual Background

A.G. is 47 years old and has a history of severe joint and muscle pain in her hips, arms and legs, and throughout her spine, with extensive (mostly unsuccessful) treatment efforts, including TENS unit, physical therapy, epidural steroid injections, botox injections, acupuncture and gabapentin.  *See, e.g.,* AR 792, 1415, 1417, 1425, 1530, 2422, 2445.[3]  In 2010, A.G. was diagnosed with fibromyalgia. AR 985.  In October 2019, her primary care doctor (Dr. Chen) referred her to UCSF Medical Center Adult Genetics Clinic for genetic testing for Ehlers-Danlos

---

[3] The Administrative Record is voluminous, containing extensive treatment records.  While the Court has reviewed the entire record, it does not attempt to provide a comprehensive overview of A.G.'s medical history here.  Rather, it will address only the medical evidence that is specifically relevant to A.G.'s challenges to the Commissioner's decision.

Syndrome ("EDS").[4] AR 694.  There, A.G. was evaluated on February 6, 2020 and March 25, 2020, resulting in a diagnosis of hypermobility EDS as AG was found to "meet the 2018 International EDS Consortium classification criteria." AR 990.  In 2021, A.G. was also diagnosed with focal segmental/regional dystonia on the basis of her symptoms of "back, neck, arm and jaw tension."[5] AR 2569.

### C.    Procedural Background

On August 20, 2019, A.G. filed a Title II application for a period of disability and disability insurance benefits with a disability onset date of May 13, 2018. AR 197. A.G. subsequently amended her onset date to December 15, 2019, AR 427, but later amended her onset date to May 24, 2018.  AR 439.[6]  The claim was denied initially on October 23, 2020, AR 229-233, and upon reconsideration on February 4, 2021.  AR 235-240. A.G. requested a hearing and an initial hearing was held on October 17, 2022;  a supplemental hearing was held on August 17, 2023. AR 47-148. A.G. was represented by an attorney at both hearings and a vocational expert also appeared at both hearings.  On October 4, 2023, the ALJ issued a decision denying the

---

[4]The National Library of Medicine, which is maintained by the National Institute of Health, describes Ehlers-Danlos syndrome as follows:

> Ehlers-Danlos syndrome is a group of disorders that affect connective tissues supporting the skin, bones, blood vessels, and many other organs and tissues. Defects in connective tissues cause the signs and symptoms of these conditions, which range from mildly loose joints to life-threatening complications. . . . An unusually large range of joint movement (hypermobility) occurs in most forms of Ehlers-Danlos syndrome, and it is a hallmark feature of the hypermobile type. . . . The loose joints are unstable and prone to dislocation and chronic pain.

https://medlineplus.gov/genetics/condition/ehlers-danlos-syndrome/ visited March 19, 2026.

[5] "Dystonia is a movement disorder that causes involuntary contractions of your muscles. These contractions result in twisting and repetitive movements. Sometimes they are painful." https://medlineplus.gov/dystonia.html, visited March 19, 2026.

[6] In her decision, the ALJ states that A.G. initially alleged an onset date of May 13, 2018 and that her "representative amended to a later onset at the supplemental hearing then amended back to April 13, 2018," citing Exhibit 22D [AR 439-440].  *See*  AR 24.  In fact, there is no evidence in the record that A.G. ever amended her onset date to April 13, 2018.  Rather, the cited exhibit is a letter from A.G.'s representative stating that she wished to amend her onset date to May 24, 2018 (the date she became unemployed).  The ALJ also appears to have erred in her findings at Step Five of her analysis, where she referred to A.G.'s "alleged onset date" as May 13, 2018 (the original alleged onset date).  Although this discrepancy amounted to just under two weeks (May 24, 2018 as opposed to May 13, 2018), the Commissioner on remand should use the correct onset date in reevaluating A.G.'s claim.

United States District Court
Northern District of California

application.  AR 21-46.  A.G.'s request for review was denied on July 25, 2024, AR 1-6, making the ALJ's decision the final decision of the Commissioner.

### D.     The ALJ's Decision

At Step One, the ALJ found that A.G. was substantially gainfully employed starting January 24, 2022.  AR 26.  In the remainder of her decision, she addresses the period between A.G.'s onset date and January 24, 2022.  AR 27.  The ALJ found that during that period, A.G. was not substantially gainfully employed.  AR 27.

At Step Two, the ALJ found that A.G. had the following severe impairments: EDS, hypermobility type EDS, and chronic pain disorder.  AR 27.

At Step Three, the ALJ found that A.G. did not have an impairment or combination of impairments that met or equaled a listing.  AR 29.

At Step Four, the ALJ found that A.G. had the following RFC:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can perform occasional postural activities. She requires a sit stand option every 30 minutes (with 30 minute minimum intervals for sitting or standing to hold in one position). She can frequently perform reaching, handling, fingering, and feeling. The claimant is capable of simple routine (not detailed or complex) duties.

AR 30.

At Step Five, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed."  AR 37. In particular, based on the testimony of the vocational expert, she concluded that A.G. could work as a counter clerk (DOT code 249.366-010); host (DOT code 349.667-014); rental clerk (DOT code 295.357-010); or a machine operator (DOT code 615.685-014).  AR 38.

## III.     ISSUES FOR REVIEW

A.G. asserts that the ALJ erred in her evaluation of the medical opinions of her primary care doctor, Dr. Lung-Lo Chen, expressed in Dr. Chen's April 2021 medical source statement, which the ALJ found not to be persuasive. Opening Brief at 26-31.  In particular, A.G. contends the ALJ's failure to provide adequate reasons for rejecting Dr. Chen's opinions was legal error and

United States District Court
Northern District of California

her rejection of Dr. Chen's opinions was not supported by substantial evidence. *Id.* She further asserts that this error was not harmless because the limitations endorsed by Dr. Chen were more severe than those in her RFC and, based on testimony offered by the vocational expert, would have rendered her disabled if fully credited. *Id.* at 32-33. A.G. asserts that "[a] remand for further administrative proceedings to allow for proper consideration of Dr. Chen's medical opinions is warranted." *Id.* at 32.

## IV.   ANALYSIS

### A.   Standard of Review

District courts have jurisdiction to review the final decisions of the Commissioner and may affirm, modify, or reverse the Commissioner's decisions with or without remanding for further hearings. 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3).   When reviewing the Commissioner's decision, the Court takes as conclusive any findings of the Commissioner that are free of legal error and supported by "substantial evidence." Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion" and that is based on the entire record. *Richardson v. Perales*, 402 U.S. 389, 401. (1971). "'Substantial evidence' means more than a mere scintilla," *id.*, but "less than preponderance." *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (internal citation omitted).   Even if the Commissioner's findings are supported by substantial evidence, the decision should be set aside if proper legal standards were not applied when weighing the evidence. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1978)).   In reviewing the record, the Court must consider both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).

### B.   Whether  the ALJ Erred in Considering Medical Source Opinion of Dr. Chen

#### 1.   Background

##### a.   Dr. Chen

Dr. Chen was A.G.'s primary care doctor from at least September 2019, *see* AR 705, through the end of the period of disability at issue in this case (January 24, 2022), AR 2996. On

United States District Court
Northern District of California

April 19, 2021, Dr. Chen completed a Physical Residual Functional Capacity Questionnaire in support of A.G.'s application for benefits. AR 1080-1084. In it, Dr. Chen stated that she saw A.G. "PRN,[7] which is more frequent than monthly." AR 1080. She listed A.G.'s diagnoses as: degenerative disc disease-cervical/thoracic, Ehlers-Danlos hypermobility type – with joint instability; migraines; and hip pain. AR 1080. She described A.G.'s symptoms as "neck-back pain; spasms, which also trigger pre-existing migraine syndrome, chronic fatigue and fluctuating joint symptoms due to predisposing genetic syndrome." AR 1080. She further described A.G.'s pain as "headache/migraine, severe – multiple times per month & lasting days[,] neck & back pain, daily, can be triggered by simply turning head – waxing/waning from moderate to severe; bilateral hip & knee pain – waxing & waning with joint instability; right shoulder pain." AR 1080. Dr. Chen identified the following "clinical findings and objective signs": "hyperflexibility of joints globally, at times however with restricted range of motion due to pain and multilevel degenerative disc disease on [illegible], neck; back spasms at times with antalgic gait." AR 1080. She stated that A.G.'s impairments had lasted at least twelve months. AR 1080. She also found that A.G.'s "experience of pain or other symptoms" was "severe enough to interfere with attention and concentration needed to perform even simple work tasks" "frequently [or] constantly" "depend[ing] on [the] day." AR 1081.

Dr. Chen described A.G.'s functional capacity as follows: ability to tolerate "moderate" work stress; walk "without rest or severe pain" one half to two blocks, sit at one time 15-20 minutes, stand at one time 25-30 minutes, total sit and stand/walk in an eight-hour workday less than two hours, breaks of one to two minutes ten times a day to stand/walk, ability to shift position at will during eight-hour work day between sitting, standing and walking, and unscheduled breaks of two minute duration throughout the day due to need for "constant position changes." AR 1082. Dr. Chen further opined that A.G. sometimes needs to elevate her legs or use a cane and that she can never lift 50 pounds, rarely lift 20 pounds and occasionally lift 10 pounds, "depend[ing] on the day[;]" that she can look down, turn her head right or left or look up

---

[7] "PRN" stands for "*pro re nata*" and means, "as needed."

occasionally; that she can hold her head in a static position frequently if a "normal position" and rarely if not; that she can twist, stoop/bend or crouch/squat occasionally and that she can rarely climb ladders or stairs. AR 1082-83. She also states that A.G. has limitations "with reaching, handling or fingering[,]" limiting A.G. to under an hour for both right and left sides with respect to grasping, turning or twisting objects, fine manipulation and reaching. AR 1083. Dr. Chen stated that A.G. would have "good days and bad days" and that she would likely be absent from work due to her impairments three or more days a month. AR 1083. She stated that the "earliest date that the description of symptoms and limitations" in the questionnaire applied was October 10, 2019. AR 1083.

> b. Dr. Lewis

Consultative examiner Rose Lewis, MD, examined A.G. on September 26, 2020 and completed an internal medicine evaluation. AR 1006-1011. In the "History of Present Illness" section of the report, Dr. Lewis summarizes A.G.'s impairments as follows:

> The claimant states she has Lynch syndrome. She had right breast adenoma excised because it was growing rapidly, but it turned out it was benign tumor. She states that she has a strong family history for cancer which is why they removed it. She states she also has pain in her lower back that radiates down her right leg. Her leg sometimes lock and it sometimes gives out. She has fallen once in the last three months. She had an MRI of her lower back and does not know the results. She also had a history of gastroparesis and states she has lost 35 pounds in three months. She has abdominal pain, bloating, gas, nausea and vomiting occasionally, dry heaves and diarrhea. Consequently, she eats mostly vegetables and rarely eats meat and has a great deal of loss of appetite. She also states she has Ehlers-Danlos syndrome with a mildly enlarged aortic root. She has pain in the right shoulder and arm and that it feels like her bones of her hand move and that her patella moves. If she stands quickly, she gets lightheaded. She sometimes cannot walk or move. She states that she can walk one and a half blocks before she has pain. She can climb a flight of stairs without pain. She can stand for 5 to 10 minutes. She can carry a gallon of milk. She states she has pain in her hands and arms if she holds a book up too long. It causes throbbing especially with the right side being worse than the left. Cold increases her pain. Heat makes her dizzy.

AR 1007.

Dr. Lewis's physical findings included the following: A.G. could not "do toe-heel walking complaining of pain in her left leg and her left leg would give out and she became short of breath"

United States District Court
Northern District of California

but she could do "tandem walking without difficulty[;]" her ambulation without a device was normal;  raising her right and left legs seated from 0 to 90 degrees elicited pain in her buttocks; her left sacroiliac joint was tender to palpation as was the "sciatic notch", the "lumbosacral junction" and the "thenar eminence" of both hands;  and her grip strength was 4/5 on the right and 5/5 on the left.  AR 1008-09.

Dr. Lewis found that A.G. had the following functional limitations:

> The claimant can stand and walk up to four hours because of the decreased balance, easy fatigability and exertional dyspnea. The claimant can sit up to six hours. The claimant does not use assistive device. The claimant can lift and carry, pushing and pulling up to 20 pounds occasionally and 10 pounds frequently because of the decreased balance, easy fatigability and exertional dyspnea. The claimant is capable of climbing occasionally, balancing frequently, stooping frequently, kneeling occasionally, crouching occasionally, and crawling occasionally because of the decreased balance, easy fatigability and exertional dyspnea. The claimant is capable of reaching over head without limitations, handling frequently, fingering frequently, and feeling without limitations. The claimant has some limitations with working at heights and working around heavy machinery because of the decreased balance, easy fatigability and exertional dyspnea. The claimant has limitations with working around extremes of temperature because cold increases her pain. The claimant has no limitations with working around chemicals. The claimant has no limitations with working around dust, fumes and gasses. The claimant has no limitations with working around excessive noise.

AR 1010.

### c.   Vocational Expert Testimony

At the August 17, 2020 hearing, the vocational expert testified that there would be "no work" for a hypothetical individual who "was limited to sitting two out of eight [hours], standing two out of eight [hours] and walking two out of eight [hours] . . . because it wouldn't add up to full-time work."  AR 141-142. The vocational expert further opined that no work was available for an individual who was: limited to sedentary work and required elevating their legs on an occasional basis to chair or hip level; would miss two days of work a month due to their impairments; would be required to take additional, unscheduled breaks totaling 10 percent beyond the customary work breaks and meal break; or would be off-task 15 percent of the workday due to pain, fatigue, mental illness, or medication side effects. AR 142-143.

At the supplemental hearing on August 17, 2023, the vocational expert offered

substantially the same testimony.  AR 77-79.

d.   ALJ's Decision

In her decision, the ALJ stated that Dr. Chen's April 2021 assessment of A.G.'s limitations was "not found to be persuasive because it is not consistent with the record as a whole and is not supported by the generally normal examination findings throughout the record." AR 34.  She reasoned as follows:

> There is no support in the record for the restrictions sitting less than two hours and standing and walking less than two hours or using a cane. [A.G.] was walking normally and was not using a cane at the consultative examination and did not report the need for a cane (12F). The consultative examiner found she had full 5/5 strength in the upper and lower extremities (12F). Further, the record does not support the extreme limitations in handling, fingering and reaching. The examiner found she had 4/5 right hand grip strength and 5/5 left hand grip strength which does not support more than frequent limitations. Dr. Chen reported degenerative disc disease however diagnostic imaging shows the findings are mild with no stenosis. On examination, Dr. Chen has noted normal neurological exams, normal gait, no acute distress, pleasant appropriate affect, no cane noted, but tenderness in the thoracic spine, and bothersome symptoms of low back pain, shoulder pain, hip pain (33F/24, 25).

AR 35.

### 2.   Legal Standards

In reviewing medical source opinions, an ALJ must "articulate . . . how persuasive" they find "all of the medical opinions" in the claimant's case record. 20 C.F.R. § 404.1520c(b).  The ALJ should consider various factors, the most important of which are supportability and consistency.   20 C.F.R. § 404.1520c(c).  Supportability is "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.' " *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency is "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.' " *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.*;  see also 20 C.F.R. § 404.1520c(b)(2) (providing that the ALJ must explain how they considered supportability and

United States District Court
Northern District of California

consistency in evaluating medical opinions).

An ALJ generally is not required to explain how other factors were considered, including the medical source's relationship with the claimant, the length and purpose of the treatment relationship, the frequency of examinations, and the source's specialization. 20 C.F.R. § 404.1520c(b)(2), (c). However, if the ALJ finds that "two or more medical opinions about the same issue are both equally well-supported . . . and consistent with the record but are not exactly the same[,]" then the ALJ should articulate how they considered the other "most persuasive" factors listed in the regulation. 20 C.F.R. § 404.1520c(b)(3).

An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [their] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors, are correct." *Id*.

### 3. Discussion

The ALJ rejected the April 2021 opinions of Dr. Chen based on her conclusion that Dr. Chen's opinions were "not consistent with the record as a whole" and "not supported by the generally normal examination findings throughout the record." AR 34. The Court finds that her conclusions are not supported by substantial evidence and are infected by legal error.

First, the ALJ cites only two treatment records in support of her conclusion that Dr. Chen's examination findings were "generally normal." AR 35 (citing 33F/ 24, 25 [AR 2497, 2498]). The first citation is to a treatment note by a different doctor, Dr. Emmanuel Mendoza, who saw A.G. for a follow-up appointment on September 30, 2022, two days after A.G. "partially dislocated her knee." AR 2497. At that visit, A.G. reported that her pain was at an 8 out of 10 even though she was on "pain meds" and the doctor noted that her range of motion was "limited because of pain" and that she had "pain with vulgus stress, pain with varus stress." AR 2497. This treatment record offers no support for the ALJ's conclusion that Dr. Chen's examination findings were "generally normal."

United States District Court
Northern District of California

11

United States District Court
Northern District of California

The second record the ALJ cited was a treatment note from an October 6, 2021 visit to Dr. Chen. AR 2498. Although the ALJ is correct that that note characterized A.G.'s neurologic exam as "normal gait" and described her affect as "pleasant" and "appropriate," the note *does not* state "no acute distress," contrary to the ALJ's decision. Instead, it described A.G.'s "longstanding and progressive pain" associated with her fibromyalgia, with "contribution of hypermobile EDS and now with focal dystonia." AR 2498. Dr. Chen further noted that A.G. reported a pain level of 9 out of 10 and that she was experiencing "neck pain, thoracic back pain, low back pain, shoulder pain [and] hip pain." AR 2498. These symptoms were limiting "working, homework, sitting, standing, exercising, walking, sleeping." AR 2498. The ALJ does not explain why these examination findings are inconsistent with the limitations she described in her April 2021 assessment.

Furthermore, the ALJ ignored extensive clinical findings in Dr. Chen's treatment records that appear to support the limitations she endorsed in her April 2021 assessment. *See, e.g.,* AR 683 (11/29/19 treatment note referring A.G. for pain management and prescribing Tramadol for fibromyalgia pain), 897-898 (4/22/2020 treatment note assessing bilateral low back pain with sciatica treated with "step up of tramadol and baclofen"), 1039 (7/23/2020 visit for bilateral rib pain in which Dr. Chen approved treatment by integrative medicine pain management practitioner specializing in musculoskeletal issues), 1051 (11/25/2020 treatment note noting left hip pain and "not bearing weight normally" and "send[ing] for films"), 1149 (2/2/21 treatment note noting neck pain that "comes and goes" and migraine, prescribing, *inter alia*, baclofen, tramadol, Tylenol with codeine), 1154 (1/13/21 treatment note noting left hip pain that was "worse," with "pain traveling down in front of leg, and a little in the back of leg too" with "throbbing" and noting that pain specialist believed A.G. was a "good candidate" for spinal stimulator), 1164 (12/2/2020 referral for acupuncture to treat A.G.'s "persistent b/l hip/SI joint pain, right shoulder/neck"), 2488 (5/27/23 treatment note noting ongoing neck pain, botox treatment scheduled, and finding as to musculoskeletal: "Decreased cervical range of motion but without signs of instability; cervical paraspinal muscles are extremely tight, ropy and painful to palpation . . . also having anterior left hip pain, just below ilium"), 2490-91 (5/16/23 treatment note noting "acute bilateral thoracic back

12

pain" and instructing A.G. to continue pain medications, use of heat and ice and mobility device), 2500-01 (8/30/21 treatment note for chronic pain, noting that neurologist was increasing dose of baclofen but treatment "limited by sleepiness" and noting that A.G. reported she had difficulty getting and staying asleep and concentrating on things nearly every day), AR 3012-13 (5/5/23 treatment note addressing "really bad pain days" "exacerbate[ed]" by work), 3056-57 (12/16/22 treatment note addressing pain that was "through the roof" and spasms that were "very bad," noting that botox treatment had not helped and prescribing Tylenol with codeine and gabapentin), 3061 (11/10/22 letter from Dr. Chen requesting work accommodation allowing A.G. to take a break every hour due to "ongoing neck and shoulder pain").

In rejecting Dr. Chen's April 2021 opinions, the ALJ also relied on findings of Dr. Lewis that A.G. was "walking normally without a cane" to conclude that there was "no support in the record for the restrictions sitting less than two hours and standing and walking less than two hours or using a cane." AR 34.  Likewise, she cited Dr. Lewis's finding that A.G. "had 4/5 right hand grip strength and 5/5 left hand grip strength" to discredit Dr. Chen's conclusions related to A.G.'s limitations in handling, fingering and reaching, concluding that Dr. Lewis's findings supported nothing more than "frequent limitations" on handling, fingering and reaching.  AR 34-35.  These findings are flawed in several respects.

First, the ALJ does not address Dr. Chen's opinion that A.G.'s symptoms waxed and waned or explain why Dr. Lewis's observation that A.G. was walking normally without a cane on the day of her examination was inconsistent with Dr. Chen's opinion that A.G. *sometimes* needed to use a cane. *See, e.g.,* A.R. 2490-91 (5/16/23 treatment note recommending use of mobility device).  Second, the ALJ does not explain how the strength of A.G.'s  upper extremities and grip were inconsistent with the limitations endorsed by Dr. Chen in fingering, reaching and handling given that Dr. Chen's opinion was not based on extremity or grip strength but instead, on A.G.'s hypermobile EDS, which is characterized by unstable and loose joints.  Finally, Dr. Chen listed numerous limitations based on the effects of A.G.'s pain and fatigue associated with her EDS and dystonia that the ALJ simply did not address, including A.G.'s ability to sustain attention and concentration, her need to elevate her legs at times to hip level for 60 percent of the workday, her

13

United States District Court
Northern District of California

need to make "constant position changes" at work, and the likelihood that A.G. would miss three days a month of work due to her symptoms.

The ALJ also discredited Dr. Chen's April 2021 opinions because Dr. Chen included degenerative disc disease as one of A.G.'s diagnoses, stating that "diagnostic imaging shows the findings are mild with no stenosis." AR 35. Yet the ALJ acknowledged earlier in her decision that "X-rays of the thoracic spine showed . . . *modest T11-T12 degenerative disc disease,*" AR 27 (citing 36F/93 [AR 2728]).  The ALJ does not cite any other diagnostic imaging that contradicts this finding.  In other words, Dr. Chen's diagnosis is consistent with the diagnostic imaging cited by the ALJ and therefore, the ALJ's reliance on this purported inconsistency is not supported by substantial evidence.

While the social security regulations were modified in 2017 to eliminate the "special deference [in the case law] to the opinions of treating and examining physicians on account of their relationship with the claimant[,]"  "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Here, the ALJ did not meet that standard as she failed to address many of Dr. Chen's opinions about A.G.'s limitations and did not point to substantial evidence in the record to support the omission of those limitations from A.G.'s RFC, which, in turn, resulted in the ALJ's finding that A.G. was not disabled.

## V.    CONCLUSION

For the reasons stated above, the Court reverses the decision of the Commissioner and remands for further proceedings consistent with this opinion.  The Clerk is instructed to enter judgment in favor of Plaintiff and against the Commissioner.

**IT IS SO ORDERED.**

Dated:  March 27, 2026

_____
JOSEPH C. SPERO
United States Magistrate Judge

14